F. TRAVIS BUCHANAN, ESQ.
Nevada Bar No. 9371
**F. TRAVIS BUCHANAN, ESQ., & ASSOC., PLLC**
701 East Bridger Ave., Suite 540
Las Vegas, Nevada 89101
Tel: (702) 331-5478
Fax: (702) 629-6919
Email: *Travis@ftblawlv.com*
*Attorneys for Plaintiff Marguerite Brathwaite, M.D.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARGUERITE BRATHWAITE, M.D., an individual, | **CASE NO.:** |
| Plaintiff, | **COMPLAINT**<br>**JURY TRIAL IS DEMANDED** |
| vs. | |
| SOUTHWEST MEDICAL ASSOCIATES, INC., an active Nevada domestic Corporation; DOES 1-10 and ROE ENTITIES 1-10, inclusive. | |
| Defendants. | |

**PLAINTIFF'S COMPLAINT**

PLAINTIFF MARGUERITE BRATHWAITE, M.D., (hereinafter referred to as "Plaintiff" or Dr. Brathwaite"), by and through her counsel, F. TRAVIS BUCHANAN, ESQ., of the law firm F. TRAVIS BUCHANAN & ASSOCIATES, PLLC., hereby alleges, avers, and complains, as follows:

/ / /

/ / /

/ / /

1

## I.

## JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION

1.    This is an action for monetary relief brought by the Plaintiff against her former employer and its principals. Plaintiff's Complaint alleges, as more fully set forth below, that she was subjected to disability and age discrimination, in violation of the Americans with Disabilities Act of 1990 (hereafter "ADA"), as amended, 42 U.S.C. §12111, *et seq.,* (codified as amended in sections of 42 U.S.C.); the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.,* ("ADEA"); and Nevada's Anti-Discrimination Statute, N.R.S., Section 613.310, *et seq.,* and retaliation for engaging in protected activity under the above listed federal and state statutes.

2.    This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. §1331, because Plaintiff's claims arise under the ADA, 42 U.S.C. §12111, *et seq.,* (codified as amended in sections of 42 U.S.C.); the ADEA, 29 U.S.C. §621, *et seq., and* the Family Medical Leave Act, as amended, 29 U.S.C. 2601, *et seq.,* 29 U.S.C. 2601, *et seq.,* (hereafter "FMLA").

3.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since "a substantial part of the events or omissions giving rise to the claim[s] occurred" within Clark County, Nevada, which is within the jurisdiction of the United States District Court for the District of Nevada.

5.    Plaintiff timely filed her Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC") and was issued a *"Right to Sue"* letter by such agency. A copy of such letter is attached hereto as **Exhibit "1,"** and dated February 9, 2022. As such, with respect to Plaintiff's ADA claim, this Complaint has been timely filed within the applicable statute of limitations, and Plaintiff has fulfilled all administrative and/or jurisdictional prerequisites to filing the instant lawsuit.

6.    Plaintiff asserts that she was discriminated against because of her age and disability, and retaliated against for complaining of mistreatment and discrimination because of her disability and age and/or engaging in activities that are otherwise protected by both federal and state law.

7.    The discrimination that Defendants subjected Plaintiff to because of her disability, age (over 40) and complaints of disability and age, as well as engagement in other activities protected by state and federal law made it all but impossible for her to feel welcome, valued, appreciated, and able to otherwise succeed without becoming depressed and sustaining severe emotional distress from the oppressive, unduly stressful, and demoralizing work environment within Defendant's professional work environment. Defendants continually treated Plaintiff differently and worse than her non-disabled and younger colleagues, discounted her complaints, discouraged her from complaining, failed to support her and/or ensure that her work environment was free from discrimination, unfair treatment and abuse, and allowed Plaintiff's lengthy tenure with the company and exceptional performance to be ignored, such that because she was an older employee with a documented cardiac related medical condition, that per her doctor's orders, required her to be off work for approximately six (6) to seven (7) weeks for recovery and rehabilitation, and then return to work with restrictions (i.e. light

duty, a temporary reduced schedule to allow her to attend cardiac rehabilitation appointments 3 times per week, etc.), Defendants subjected Plaintiff to discriminatory treatment, which ultimately led to her termination on April 7, 2021, and being replaced by a younger doctor, after Plaintiff complained of mistreatment, due to her age and record of disability, and because Defendants did not want to continue to accommodate her disability and/or continue to employ her due to her age (over 40), all in violation of federal and Nevada state law.

8.  Defendants, by and through its supervisory employees and Human Resources Department, treated Plaintiff who is over 40, differently from her younger colleagues (under 40), and her colleagues who were not disabled and/or did not have a record of being disabled, and Defendants subjected her to different terms and conditions of employment due to her age, disability and/or perceived disability, and engagement in activities protected under state and federal law.

9.  After Plaintiff complained to Defendant's management about how she felt mistreated when she returned to work following her approved medical leave, with restrictions, Defendants refused to remedy the situation.

10. Defendants continued to allow Plaintiff to be discriminated against because of her age, disability, record of disability and/or perceived disability, and following her complaints of discrimination, retaliated against her by: Placing Plaintiff on a different call schedule than her whole OBGYN department (a 24-hour call schedule vs. a 12-hour call schedule), despite her seniority over the younger doctors in her department; Overly scrutinizing her work performance; Allowing and encouraging its subordinate nurses to complain about her re: trivial matters; Allowing and permitting Plaintiff's doctor/co-

workers to repeatedly disrespect her, yell at her, and verbally harass Plaintiff, in front of her subordinate co-workers.

11. As a result of Defendant's illegal conduct, as set forth in the instant Complaint, Plaintiff has suffered significant damages and losses.

## II.

## <u>PARTIES</u>

12. Plaintiff Dr. Brathwaite, is and has been an individual residing within the State of Nevada, County of Clark. Plaintiff is fifty-three (53) years old, and has a documented serious, cardiac related medical condition, and thus is a member of the classes protected by the ADEA, ADA, and NRS 613.310 *et seq.*

13. At all times herein mentioned, Defendants Southwest Medical Associates, Inc., (hereinafter "Defendants" or "Southwest Medical") was and is an active Nevada domestic corporation, organized under Nevada law, and doing business in Nevada (Clark County), at all times relevant herein.

14. At all times relevant to this Complaint, Defendants Southwest Medical, is and has been a "person" and "employer," as defined under the ADA, ADEA and NRS 613.310, *et. seq.* Defendants and their employees are properly licensed and/or otherwise legally authorized to do business in Clark County, Nevada, and the unlawful employment practices, and deprivation of rights alleged hereunder were committed within the State of Nevada.

15. At all times mentioned herein, Defendants Southwest Medical had 50 or more employees in 20 or more work weeks during the year of the allegations set forth herein and/or during the preceding calendar year of the allegations set forth in this lawsuit, and

as such Defendants Southwest Medical is a covered employer under both the ADA, as amended, NRS 613.330, and the FMLA.

16. Defendants, and their personnel at all relevant times herein were required to comply with all state and federal statutes which prohibit discrimination because of age and disability.

17. At all times herein mentioned herein, Defendants, DOES 1 through 10, and ROE Entities 1 through 10, were required to comply with all state and federal statutes which prohibit discrimination because of age, disability and FMLA utilization.

18. At all times herein mentioned, DOES 1 through 10, and ROE Entities 1 through 10, are believed to have been headquartered and/or residing in the State of Nevada, or otherwise licensed to do business or actually doing business therein, including within Clark Count.

19. The true names or capacities whether individual, corporate, associate, or, otherwise, of Defendants named herein as DOES 1 through 10, inclusive, ("DOES 1-10") and ROE CORPORATIONS, 1 through 10, ("ROE CORPORATIONS 1-10") inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names; Plaintiff is informed and believes and therein alleges, that each of the Defendants designated herein as DOE and ROE are responsible in some manner for the events and happenings referred to, and caused damages proximately to Plaintiff, and Plaintiff will ask leave of the Court to amend the Complaint to insert the true names and capacities of DOES 1 through 10, and ROE CORPORATIONS 1 through 10,

inclusive, when the same have been ascertained, and to join such Defendants in this action.

20. Whenever it is alleged in this Complaint that a party did any act or thing, it is meant that such party's officers, agents, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of such party or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of such party's officers, agents, servants, employees, or representatives. Specifically, parties are liable for the actions of their officers, agents, servants, employees, and representatives.

21. Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendants are legally attributable to the other Defendants as each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said acts, making each of the Defendants an agent of the other and making each of the Defendants jointly responsible and liable for the acts and omissions of each other as alleged herein.

**III.**

**FACTUAL BACKGROUND**

22. Defendants, Southwest Medical is Nevada's largest multi-specialty medical group, that provides patients with access to 41 clinics, including six Urgent Cares, and more than 450 local health care providers throughout Southern Nevada.

23. Plaintiff Dr. Brathwaite earned her Bachelor of Science in chemistry at the

University of Manitoba in Winnipeg, Manitoba, Canada, and went on to the Loma Linda School of Medicine in California to earn her Medical Degree. During her illustrious career in the medical profession, in addition to serving as Executive Chief Resident at Martin Luther King Jr. - Drew/UCLA Medical Center in Los Angeles, Plaintiff commenced working for Defendants Southwest Medical in its obstetrics/gynecology (OB/GYN) department, on or about August 3, 1998.

24. At all times relevant to this matter Plaintiff Dr. Brathwaite was 52 Years old (over 40 years old).

25. While employed in Defendant's OB/GYN Department, Plaintiff Dr. Brathwaite, as a Board-Certified OB/GYN, MD, FACOG, provided complete care for women during pregnancy. This included, but was not limited to, providing treatment to patients for: Abnormal bleeding; Bacterial vaginosis (a bacterial infection of the vagina); Chronic pelvic pain; Endometriosis (when tissue grows outside the uterus); Excessive bleeding; Fibroid cysts (non-cancerous growths on the uterus); HIV/AIDS; Lack of menstruation (no periods); Menopause issues; Pelvic inflammatory disease (PID); Polycystic ovary syndrome (PCOS); Sexually transmitted diseases (STDs); Urinary tract infections; Annual well-woman exams; Breast exams, and Pregnancy Care.

26. Early in her tenure with Defendants, in or about early 2004, based on her exceptional performance within Defendant's OB/GYN Department, Plaintiff was selected to serve as Chief of Obstetrics and Associate Medical Director. In her promoted position, Plaintiff's additional duties and responsibilities, included:  Managing the OB Department's call schedule; Coordinating the evaluation of doctors and midlevel

evaluations; Implementing policies; Working on the Quality Review Committee; Utilization Review for Southwest Medical and non-Southwest Medical doctors.

27. At all times during Plaintiff's lengthy 23 years tenure with Defendants, she received annual performance evaluations that rated her performance as satisfactory, with no demerits.

28. At no time during Plaintiff's lengthy 23 years tenure with Defendants, was she ever subject to any formal disciplinary action for any matters that resulted in formal discipline being imposed against her.

29. In or about July of 2020, Plaintiff became seriously ill and was hospitalized after having suffered from a severe bout of chest pain from a later confirmed serious cardiac related medical condition. After being examined and undergoing a battery of tests, Plaintiff's testing revealed she had a 100% stenosed right coronary artery, which could have resulted in sudden cardiac death. In fact, this condition is usually found after autopsies are done after the sudden death of person who expires unexpectedly. Upon being admitted to the hospital here in Las Vegas, Nevada, due to the complexity of the coronary artery bypass, surgical procedure that she needed, Plaintiff was transferred to Cedars-Sinai Medical Center in Los Angeles, California wherein she underwent such surgery. After successfully making it through the surgical procedure, which saved her life, Plaintiff was eventually discharged from the hospital, seven days later, on or about July 28, 2022.

30. At all times during her hospital stay, Plaintiff was transparent with Defendants, such that they were fully aware of the serious nature of her medical condition, and need for time off from work for approximately 6 – 7 weeks, per her doctor's orders.

31. In or about September of 2020, Plaintiff returned to work on a reduced schedule, wherein for 2 to 3 weeks she worked half-days, then she was allowed to work

Mondays, Wednesdays and Fridays for 6 hours, instead of 8 hours, which allowed her to attend the rigorous cardiac rehabilitation treatment protocol that her doctors opined was necessary, in order for Plaintiff to manage her cardiac related medical condition, and safely perform her daily life activities, with a goal of her eventually returning back to work full time.

32. Between September of 2020, and the date of her eventual termination on April 7, 2021, Plaintiff continued to work a modified/reduced schedule, such that she could attend her cardiac rehab appointments three (3) times per week.

33. On or about September 14, 2020, when Plaintiff returned to work, she was granted FMLA intermittent leave, wherein she was allowed to leave work 2 hours early on Mondays, Wednesdays, and Fridays. This intermittent leave allowed Plaintiff to continue with her cardiac rehabilitation appointments, and attend the numerous follow up appointments with her cardiologist.

34. From the time after Plaintiff first returned to work on light duty status, after she was released from the hospital in July of 2021, Plaintiffs supervisors and co-workers became hostile towards her. Plaintiff's general work performance started to be overly scrutinized, and a subordinate nurse informed her that management went out of their way to encourage a group of subordinate nurses to lodge complaints against Plaintiff, for matters that were trivial in nature.

35. After Plaintiff was granted FMLA intermittent leave in September of 2020, things got worse, and in addition to her work performance continuing to be overly scrutinized by her superiors, the same subordinate nurses that were encouraged by management to complaint about Plaintiff began to disrespect and ostracize her. After Plaintiff was disrespected, repeatedly yelled at, and verbally harassed by other doctors, she complained to Human Resources. Plaintiff also complained about the discrimination and harassment she was being subjected to, as she believed from the context of some

of the statements that were directed at her by her supervisors and co-workers, was due to her age, medical condition, and being granted FMLA intermittent leave, but nothing was done in response to her complaints.

36. Plaintiff's complaints were completely blown off and ignored by Defendant's Human Resources Department and upper management, and she remained relegated to working in a hostile work environment, under the guise of feeling defeated, embarrassed and demoralized, especially since in addition to working in a stressful work environment, she was also still trying to manage her serious cardiac related medical condition, and the work related stress only aggravated her underlying symptomology and would often result in her experiencing chest pain, flare ups.

37. After Plaintiff complained to Defendant's Human Resources Department and nothing was done to address her complaints of discrimination in the workplace, she continued to be treated differently from the other younger and non-disabled doctors and co-workers, with respect to the terms and conditions of her employment. For example, when Defendant's changed the OB/GYN Department's call schedule, Plaintiff was placed on a different call schedule than her whole OB/GYN Department (a 24-hour call schedule vs. a 12-hour call schedule), despite her seniority over the other younger doctors. Many of the younger doctors in her department whose preference for working the 12-hour call schedule was granted, while Plaintiff's preference and request to work such 12-hour call schedule was completely ignored, despite her seniority within the Department.

38. From the time after Plaintiff first returned to work on light duty status in September of 2020 (after she was released from the hospital), up to and through the time of her termination on April 7, 2021, Plaintiffs sensed that her supervisors and co-workers treatment of her was tinged with hostility, and she believes it was because of

her serious medical condition, and continued need for an accommodation in the form of a light duty/reduced schedule, which was necessary such that she could continue with her rigorous cardiac rehabilitation schedule, and attend her numerous follow up appointments with her cardiologist.

39. Plaintiff also believes that her supervisors and co-workers, were hostile towards her because of her age.

40. Plaintiff has been treated differently than similarly situated employees by Defendants with respect to the terms and conditions of her employment because of her age, disability, and continued need for an accommodation, and because she complained of discrimination to her employer about her employer's rampant unfair treatment of her because of her age, disability, and continued need for an accommodation. Once she initially complained of the discrimination to the human resources department, she had a target on her back, such that her work performance continued to be overly scrutinized, her subordinate nurses were encouraged by management to complain about her, her subordinate nurses began to disrespect and ostracize her, she was repeatedly yelled at by other providers, and Plaintiff was placed on a different call schedule than her whole OBGYN Department (a 24-hour call schedule vs. 12-hour call schedule), despite her seniority over the other younger doctors.

41. Defendants have engaged in illegal discrimination against Plaintiff, because they did not want to continue to accommodate her disability, and Defendants terminated Plaintiff because of her age (over 40), her disability, and in retaliation for her previous complaints of mistreatment and discrimination, which is a protected activity under both federal and Nevada State law.

42. On April 7, 2021, Plaintiff was abruptly, and unexpectedly terminated from her employment with Defendants, when Defendant's Director – Dr. Carl Allen, and the Chief

of its OB/GYN Department Dr. Rozanne Bentt, informed her she was being terminated "for no-cause."

43.  Defendants, by terminating Plaintiff for "no-cause," despite her overall satisfactory work performance at all times during her 23 year tenure with the company, and despite Plaintiff having no record whatsoever, of discipline and/or deficiencies in her work performance, is telling as she believes such confirms that Defendants have treated her differently than her younger and non-disabled co-workers, in violation of both federal and Nevada law, which expressly prohibits such discrimination by employers.

44. Shortly after Defendants abruptly terminated Plaintiff from her termination on April 7, 2021, "for no cause," Defendants proceeded to hire a younger doctor, who was under 40 years of age.

45. By Defendants failing to prevent discrimination based on age and disability, despite being given the opportunity to correct and prevent such blatant discrimination against Plaintiff,  Defendants willfully violated federal and state anti-discrimination laws.

46.  Plaintiff has been treated differently than similarly situated employees by Defendants in the terms and conditions of her employment because of her age and disability.

47. In spite of her complaints, concerns and Defendant's blatantly unlawful and discriminatory treatment of her, Plaintiff continued to report to work daily and performed her duties satisfactorily, up to the time she was unlawfully terminated.

48. Plaintiff suffered embarrassment, mental anguish, emotional distress and/or other general compensatory non-economic damages as a direct and proximate result of Defendants' unlawful actions.

49. Plaintiff has suffered and will suffer lost wages and benefits of employment as a

direct and proximate result of the actions of the Defendants.

50. Plaintiff has suffered and will suffer general economic damages and non-economic damages as a direct and proximate result of the actions of the Defendants.

51. Plaintiff has been required to hire an attorney and expend fees and costs to pursue her rights through this action.

**IV.**

**FIRST CAUSE OF ACTION**
**(Disability Discrimination and Retaliation under the Americans with Disabilities Act)**

52. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 51, as set forth above.

53. Defendants, by and through its management and/or employees, discriminated against Plaintiff on the basis of her disability and/or continued need for an accommodation, by among other things: Allowing her to be repeatedly subjected to hostility; Overly scrutinizing Plaintiff's work performance; Encouraging subordinate nurses to lodge complaints against Plaintiff, for matters that were trivial in nature; Allowing subordinate nurses to disrespect and ostracize Plaintiff; Allowing other doctors to repeatedly yelled at, and verbally harass Plaintiff in front-of her co-workers; Placing Plaintiff on a different call schedule than her non-disabled peers and/or peers that had no work restrictions and/or need for accommodations, and by terminating Plaintiff "for no cause."

54. Defendant's ultimately terminated Plaintiff under circumstances suggesting such was because of her disability and/or continued need for an accommodation and/or in retaliation of her complaints of mistreatment and discrimination, which is a protected activity under federal law.

55. The foregoing conduct constituted illegal discrimination prohibited by the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.,* as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), and are a direct and proximate cause of substantial financial damages to Plaintiff, including but not limited to compensatory damages for lost earnings, loss of happiness, loss of opportunities, loss of reputation and loss of prestige. As such, Defendants are directly and proximately responsible for Plaintiff's damages in an amount to be proven at trial.

56. As a further direct and proximate result of the unlawful discrimination, it has been necessary for Plaintiff to retain the services of counsel to represent her in the above-entitled matter, and she should be awarded reasonable attorney's fees and costs.

**V.**

**SECOND CAUSE OF ACTION**
**(NRS 613.330 Disability Discrimination and Retaliation)**

57. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56, set forth above.

58. Defendants, in their above alleged conduct have in addition to discriminating against Plaintiff due to her disability, and continued need for an accommodation, have also perpetuated a hostile work environment harming Plaintiff based upon her disability, and continued need for an accommodation, and have unlawfully singled her out for discriminatory conduct in violation of NRS 613.330, *et seq.* including but not limited to: Allowing her to be repeatedly subjected to hostility; Overly scrutinizing Plaintiff's work performance; Encouraging subordinate nurses to lodge complaints against Plaintiff, for matters that were trivial in nature; Allowing subordinate nurses to disrespect and

ostracize Plaintiff; Allowing other doctors to repeatedly yelled at, and verbally harass Plaintiff in front-of her co-workers; Placing Plaintiff on a different call schedule than her non-disabled peers and/or peers that had no work restrictions and/or need for accommodations, and by terminating Plaintiff "for no cause."

59. Defendant's ultimately terminated Plaintiff under circumstances suggesting such was because of her disability and/or continued need for an accommodation and/or in retaliation of her complaints of mistreatment and discrimination, which is a protected activity under Nevada State law.

60. As a result of Defendants unlawful conduct, Plaintiff has suffered and will continue to suffer loss of past income and employee benefits, mental anguish, emotional distress, embarrassment and other damages. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

61.  As such, Defendants are directly and proximately responsible for Plaintiff's damages in an amount to be proven at trial.

**VI.**

**THIRD CAUSE OF ACTION**

**(ADEA – Age Discrimination and Retaliation)**

62. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 61, set forth above.

63. On April 7, 2021, Defendants notified Plaintiff of their intent to terminate "for no cause," Plaintiff's employment with Defendants.

64. On April 7, 2021, Plaintiff was 52 Years old.

65. Shortly after Plaintiff's termination by Defendants, Defendants replaced Plaintiff

16

with another doctor who was under the age of 40.

66. Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. Sect. 621, *et. seq.,* because Plaintiff was in the protected age group, was qualified to do, and was doing the work she was hired for in a satisfactory manner, Plaintiff was subjected to adverse employment actions by Defendants, and Defendants were motivated to act because of Plaintiff's age and/or complaints to Defendants about the mistreatment and/or discrimination she was being subjected to, because of her age.

67. Defendants willfully violated the Age Discrimination in Employment Act and, therefore, are liable to Plaintiff for double damages.

68. As a direct result of the aforesaid unlawful discriminatory employment practices, and retaliatory acts engaged in by Defendants, which were in violation of the Age Discrimination in Employment Act, Plaintiff Dr. Brathwaite also sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to suffer a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

**VII.**

**FOURTH CAUSE OF ACTION**

**(NRS 613.330 Age Discrimination and Retaliation)**

69. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 68, set forth above.

70. On April 7, 2021, Defendants notified Plaintiff of their intent to terminate "for no cause," Plaintiff's employment with Defendants.

71. On April 7, 2021, Plaintiff was 52 Years old.

72. Shortly after Plaintiff's termination by Defendants, Defendants replaced Plaintiff with another doctor who was under the age of 40.

73. Defendants violated NRS 613.330, *et. seq.,* because Plaintiff was in the protected age group, was qualified to do, and was doing the work she was hired for in a satisfactory manner, Plaintiff was subjected to adverse employment actions by Defendants, and Defendants were motivated to act because of Plaintiff's age and/or complaints to Defendants about the mistreatment and/or discrimination she was being subjected to, because of her age.

74. Defendants willfully violated NRS 613.330, *et seq.,* and, therefore, are liable to Plaintiff for damages.

75. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendants, which were in violation of NRS 613.330, *et seq.,* Plaintiff Dr. Brathwaite also sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to suffer a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

76. As a further direct result of the aforesaid unlawful discriminatory employment Practices engaged in by Defendants in violation of NRS 613.330, et seq., Plaintiff Dr. Brathwaite has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**VIII.**

**FIFTH CAUSE OF ACTION**

**(Breach of Employment Contract and Breach of The Covenant of Good Faith and Fair Dealing)**

77. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 76, set forth above.

78. Under Nevada law, every contract carries and implied covenant of good faith and fair dealing (*A.C. Shaw Const., Inc. v. Washoe County,* 105 Nev. 913, 784 P.2d 9 (1989) and the question of good faith in the performance of a contract term is a question of fact. (105 Nev. 913 at 916, 784 P.2d at 11).

79. By terminating Plaintiff Dr. Brathwaite's contract ostensibly "without cause" while harboring a discriminatory motivation, as alleged herein in this complaint, Defendants breached the employment contract, and violated the implied covenant of good faith and fair dealing.

80. By terminating Plaintiff "for no cause," when she was performing her job satisfactorily, and she was not cited and/or accused of violating any reasonable work-place rule, policy and/or procedure, nor was Plaintiff ever disciplined and/or notified of any documented job performance deficiencies, Defendants breached the employment contract, and violated the implied covenant of good faith and fair dealing.

81. By terminating Plaintiff "for no cause," after she complained to Defendants about the mistreatment and/or discrimination and harassment she was being subjected to, because of her age, disability, and continued need for an accommodation, Defendants breached the employment contract, and violated the implied covenant of good faith and fair dealing.

82. In order to protect her rights, Plaintiff has been compelled by the unlawful acts

of Defendants to retain the services of an attorney, and has been made to incur costs of litigation, and is entitled to her fees and costs therefore.

83. Plaintiff has been damaged in an amount to be determined, for which she is entitled to damages, liquidated damages, equity, and other monetary legal redress.

**IX.**

**SIXTH CAUSE OF ACTION**

**(FMLA Interference)**

84. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 83, set forth above.

85. In September of 2020, Plaintiff upon being found eligible for intermittent FMLA leave by Defendants Southwest Medical, who was a covered employer, was actually entitled to and granted FMLA leave, on an intermittent basis by Defendants.

86. While still on FMLA leave, on an intermittent basis, on April 7, 2021, Defendants terminated Plaintiff's employment.

87. As a result of Defendants unlawful termination of Plaintiff, while she was still on FMLA leave, on an intermittent basis, Defendants interfered with Plaintiff's exercise of her rights under the FMLA.

88. As a result of Defendants unlawful conduct, Plaintiff has suffered and will continue to suffer loss of past income and employee benefits, mental anguish, emotional distress, embarrassment, and other damages.

88 Plaintiff has a statutory right to liquidated damages.

89 Plaintiff has a statutory right to recover all attorney's fees and costs.

**X.**

**<u>SEVENTH CAUSE OF ACTION</u>**

**(Wrongful Termination for Filing Claims of Discrimination in Violation of Nevada's Public Policy)**

90.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 89, set forth above.

91.    Defendants Southwest Medical is an employer as defined by Nevada law.

92.    At all times relevant herein, Plaintiff was over the age of 40, disabled, and an employee who had and continued to need an accommodation. Plaintiff was also an employee that was eligible for, granted, and on FMLA on an intermittent basis.

93.    Plaintiff complained of mistreatment, discrimination and harassment based on her protected class status, and subsequent to lodging her complaints of mistreatment, discrimination, and harassment in her work environment, she was terminated from her position by Defendants.

94.    Based upon information and belief, Defendants in whole or in part terminated Plaintiff's employment because she was disabled, in need of continued accommodation, on FMLA intermittently, and in retaliation for her lodging complaints of unlawful discrimination in violation of Nevada law.

95.    Defendant's actions were done intentionally with malice and forethought knowing they would inflict undue injury upon Plaintiff. Accordingly, Plaintiff is legally entitled to receive punitive damages.

/ / /

/ / /

**WHEREFORE, Plaintiff Dr. Brathwaite respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:**

1. For a trial by jury on all appropriate issues.
2. For all employment-related losses subject to proof.
3. For compensation for all expenses incurred to remedy the pain and suffering that was the direct and proximate result of Defendants above-mentioned actions.
4. For compensatory damages in a sum or value to be proven at trial.
5. For prejudgment interest.
6. For reasonable attorney's fees and all costs incurred by Plaintiff Ms. Hall herein; and
7. For such other and further relief as the Court shall deem just and proper.

### JURY DEMAND

Plaintiff Dr. Brathwaite demands that all issues in this case be tried by a jury in accordance with the Seventh Amendment of the United States Constitution, and pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED this **6th** day of May, 2022

By: ***/s/ F. Travis Buchanan, Esq.***
F. TRAVIS BUCHAN, ESQ.
Nevada Bar No. 9371
701 E. Bridger Ave., Ste. 540
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*