UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARGUERITE BRATHWAITE, M.D.,<br><br>  Plaintiff(s),<br><br>v.<br><br>SOUTHWEST MEDICAL ASSOCIATES, INC.,<br><br>  Defendant(s). | Case No. 2:22-cv-00729-JCM-NJK<br><br>**REDACTED<br>REPORT AND RECOMMENDATION**<br><br>[Docket Nos. 44, 48] |

Pending before the Court is Defendant's motion to enforce settlement. Docket No. 44; Docket No. 48 (sealed). Plaintiff filed a response in opposition. Docket No. 53; Docket Nos. 52, 55 (sealed). Defendant filed a reply. Docket No. 56; Docket No. 60 (sealed). The parties filed supplemental briefs. Docket Nos. 72, 73. On October 26, 2023, the undersigned held an evidentiary hearing. Docket No. 77; *see also* Docket No. 80 (transcript). Exhibits were submitted for the evidentiary hearing. Docket No. 74.[1] The exhibits were admitted by stipulation. Docket Nos. 77, 78. On January 12, 2024, the parties filed proposed findings of fact and conclusions of law. Docket Nos. 86, 88 (sealed), 89. For the reasons discussed below, the undersigned **RECOMMENDS** that the motion to enforce settlement be **GRANTED**.[2]

**I.   BACKGROUND**

Plaintiff is a medical doctor who brought this suit alleging employment-related causes of action under state and federal law, including disability discrimination, retaliation under the Americans with Disabilities Act, age discrimination, Family and Medical Leave Act interference, breach of contract, and wrongful termination. Docket No. 1 at ¶¶ 52-95. On December 12, 2022,

---

[1] The undersigned will hereafter cite to these documents as "Jt. Ex. __."

[2] The Court has separately addressed myriad sealing requests, finding that redactions are warranted. As such, the undersigned will issue an unredacted report and recommendation under seal, as well as a redacted report and recommendation on the public docket.

1

the parties participated in an early neutral evaluation session for more than three hours.  Docket No. 31.  Plaintiff and her attorney (T. Floyd Buchanan) participated in the early neutral evaluation.  *See id.*  At the early neutral evaluation, the parties exchanged settlement proposals, including Plaintiff making a binding offer to settle the case for ▇.  *E.g.*, Docket No. 80 at 42.  The early neutral evaluation did not result in a settlement.  *See* Docket No. 31.

In the weeks that followed the early neutral evaluation, Attorney Buchanan represented to the Court that "the parties are engaged in settlement negotiations."  Docket No. 37 at 3.  The parties' settlement efforts took the form of communications between counsel.  *See, e.g.*, Jt. Ex. 8; Docket No. 80 at 9.  On March 6, 2023, Attorney Buchanan sent an email to defense counsel with a subject line of "Response from our client Dr. Brathwaite to your recent offer of ▇."  Jt. Ex. 1.  The body of that email continued with Attorney Buchanan stating as follows:

> Dr. Brathwaite has rejected your offer of ▇ and now counters with ▇.  Please let me know if your client can come up to ▇, so we can work to get this matter resolved.  I will present any increased offer to Dr. Brathwaite once you relay such to me.

*Id.*  On March 8, 2023, defense counsel responded with an email stating:

> Good news – my client will accept Dr. Brathwaite's offer of ▇ to resolve this employment case in exchange for executing a settlement agreement with customary terms . . .  I'll prepare a draft settlement agreement with all the terms to circulate for your review and input.  Call me with any questions in the meantime.

Jt. Ex. 2.

On March 22, 2023, defense counsel emailed a draft settlement agreement memorializing the terms of the settlement.  Jt. Exs. 3-4.  It is undisputed that the nonmonetary terms in the draft settlement agreement are standard and contain "no unusual language."  *E.g.*, Jt. Ex. 10; Docket No. 80 at 22.  On April 20, 2023, Attorney Buchanan stated that "Dr. Brathwaite does not feel comfortable settling this matter for ▇."  Jt. Ex. 6.  Attorney Buchanan indicated that Plaintiff's position was predicated on the fact that Attorney Buchanan had mistakenly offered to settle below the range his client had authorized and that he "may not have correctly explained" to his client the fee and tax implications of any settlement.  *Id.*  Attorney Buchanan did not identify any nonmonetary term that was problematic for Plaintiff and, instead, urged that "continued

negotiation may be fruitful (*if your client's are* [sic] *amenable to settling this matter for more than is on the table now*)." *Id.* (emphasis added).

On May 5, 2023, Attorney Buchanan signed a stipulation indicating that, "during settlement negotiations, Plaintiff provided Defendant with a written offer to settle, and Defendant accepted the offer via email. Following this acceptance, Defendant provided Plaintiff with a draft settlement agreement for review." Docket No. 39 at 2. The stipulation explained further that, "while reviewing the draft settlement agreement, Plaintiff raised an issue that requires additional time for the Parties to resolve." *Id.*

On May 16, 2023, Attorney Buchanan circulated a proposed revision to the written settlement agreement, which increased the settlement amount from ████ to ████ and suggested other changes. *See* Jt. Ex. 9 at ¶ 2(a).

On June 28, 2023, Defendant filed the instant motion to enforce the settlement agreement in the amount of ████. Docket No. 44. That is the matter now before the Court.

**II.    STANDARDS**

"Employment cases are often very personal in nature. Parties generally reach a settlement of such cases only when each side is unhappy with the outcome." *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1043 (D. Nev. 2021). While settlement agreements are designed to end litigation, *in re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994), the bittersweetness described above can result in later efforts to unsettle a case or resettle it on different terms, *Guzik Tech. Enterps., Inc. v. W. Digital Corp.*, 2014 WL 12465441, at *1 (N.D. Cal. Mar. 21, 2014). When such circumstances occur, courts have inherent authority to enforce settlement agreements in pending cases. *See, e.g., City Equities Anaheim*, 22 F.3d at 957-58.

Even when a case involves a federal cause of action, the construction and enforcement of settlement agreements are governed by state law. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013). Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "A contract can be formed . . . when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id.*

3

## III. ANALYSIS

The undersigned addresses the following in turn below: (1) whether there was an offer, acceptance, meeting of the minds, and consideration; (2) whether an enforceable settlement agreement does not exist on the basis of lack of authority by Plaintiff's counsel; and (3) whether Plaintiff may back out of the settlement based on statutory protections.[3]

### A. Offer, Acceptance, Meeting of the Minds, and Consideration

The undersigned begins the analysis with the basic components of an agreement: an offer, an acceptance, a meeting of the minds, and consideration. *See, e.g.*, Docket No. 55 at 5-6. There is no dispute in this case that there was an acceptance and consideration. Jt. Ex. 2. Plaintiff disputes whether an offer was made to settle for ▓▓▓, and whether there was a meeting of the minds. Plaintiff argues that her attorney's email that "Plaintiff . . . now counters with ▓▓▓" was not a firm counteroffer, but was a conditional counteroffer simply suggesting that Defendant increase its settlement offer subject to Plaintiff's later consideration. *See, e.g.*, Docket No. 80 at 12-14, 17. Defendant argues that this email was an actual counteroffer, which is now binding upon its acceptance, and that there was a meeting of the minds. *See, e.g.*, Docket No. 48 at 6-7. Defendant has the better arguments.

The factual basis for the parties' arguments centers on the email from Attorney Buchanan to defense counsel on March 6, 2023. In that email, Attorney Buchanan wrote a subject line of "Response from our client Dr. Brathwaite to your recent offer of ▓▓▓" and then stated that:

> Dr. Brathwaite has rejected your offer of ▓▓▓ and now counters with ▓▓▓. Please let me know if your client can come up to ▓▓▓, so we can work to get this matter resolved. I will present any increased offer to Dr. Brathwaite once you relay such to me.

Jt. Ex. 1. Although not the work of a wordsmith, the most natural reading of the email is that it was extending an offer to settle for ▓▓▓. Indeed, the email on its face indicates that "<u>Dr. Brathwaite</u> has rejected your offer of ▓▓▓ and <u>now counters with</u> ▓▓▓." *Id.* (emphasis added).

---

[3] The arguments have been a moving target. The undersigned has reviewed all of the arguments presented and finds that a settlement agreement was reached and is enforceable. Any arguments not discussed explicitly herein have been rejected to the extent inconsistent with the recommendation made to enforce the settlement agreement. *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 314 n.12 (D. Nev. 2019).

4

Contrary to the plain language of the email exchange, Attorney Buchanan testified at the evidentiary hearing that the email was not an offer at all, but that it was meant to simply urge Defendant to raise its offer to ███, and that Attorney Buchanan would present any such movement from the defense to Plaintiff for her evaluation. *See, e.g.*, Docket No. 80 at 12-14, 17. Attorney Buchanan's testimony is not credible. As noted above, the email itself includes the subject line stating that the response was coming "from our client Dr. Brathwaite" and that "<u>Dr. Brathwaite</u> has rejected your offer of ███ <u>and now counters with</u> ███." Jt. Ex. 1 (emphasis added). When defense counsel accepted the offer, Attorney Buchanan did not respond that there was not an offer or that Plaintiff had not actually agreed. *See, e.g.*, Docket No. 80 at 18. Consistent with the plain language of the email exchange, Attorney Buchanan also represented to the Court, on May 5, 2023, that "Plaintiff provided Defendant with a written offer to settle, and Defendant accepted the offer via email." Docket No. 39 at 2. Moreover, conferral discussions between counsel include statements by Attorney Buchanan that he had in fact extended a ███ offer to settle this case, albeit allegedly by mistake. *See* Jt. Ex. 6 (email of April 20, 2023, in which Attorney Buchanan explained that "Dr. Brathwaite gave me a range of authority in which to negotiate and the amount I sent you in our counter (███), was mistakenly less than the bottom range of her authority"). The Court has been provided with no logical explanation as to how Attorney Buchanan could have been both simply urging Defendant to sweeten the pot and making an offer himself that was mistakenly low.[4] Lastly, Attorney Buchanan's explanation is inconsistent

---

[4] The factual representations have changed in whack-a-mole fashion as new legal arguments have been advanced. Attorney Buchanan stated that he mistakenly conveyed an offer to settle that was below Plaintiff's range based on confusion as to taxes and fees. *E.g.*, Jt. Ex. 6 (email from April 20, 2023). At the evidentiary hearing, Attorney Buchanan testified that he extended a settlement number that *he knew* was below Plaintiff's range, but was simply trying to get a better number from Defendant to present his client. Docket No. 80 at 15-16. Upon being pressed as to the inconsistency, Attorney Buchanan recanted his assertion of a mistake:

> Q. Okay. But your briefing indicated that you mistakenly stated a number that was below the range and that you thought it was within the range, but now you're saying that you knew it was below?
>
> A. No, I didn't – I didn't – I guess I didn't mean that . . . I was trying to get her to come up . . .

Docket No. 80 at 16; *see also id.* at 27 ("Q. So was there a mistake in the range or did you make an offer that was below the range? A. I made an offer below the range").

5

with common sense. When an attorney wants to explore whether the opposing side can sweeten the settlement pot as a means to see if his own client may be interested, the attorney generally just says so. *Cf. Asire v. Carson City Sch. Dist.*, 2020 WL 3884423, at *7 (D. Nev. July 8, 2020). If Attorney Buchanan was trying to improve Defendant's settlement position without binding his client to accepting it, he could have said something like: "I don't know if my client will take it, but would your client be willing to increase its offer to ▮▮▮▮?" Instead, Attorney Buchanan sent an email conveying a "[r]esponse from [his] client Dr. Brathwaite" that the client was "reject[ing]" the offer on the table and "counter[ing]" with a new offer. *But see* Jt. Ex. 1.[5] Attorney Buchanan's convoluted and contradictory testimony does not add up.

---

[5] Plaintiff relies on the last sentence of the email that Attorney Buchanan will present "any increased offer to Dr. Brathwaite" to argue that this was not meant to be a binding offer. *See, e.g.*, Docket No. 80 at 13-14; Docket No. 55 at 6. This contention is not persuasive. This sentence can be read as indicating simply that an improved offer by the defense that was still less than ▮▮▮▮ would be conveyed to Plaintiff. Moreover, the communication here stands in stark contrast to cases where an agreement states literally that performance is "subject to" certain conditions. *E.g., Burgess Constr. Co. v. M. Morrin & Son Co.*, 526 F.2d 108, 113 (10th Cir. 1975). The record in this case does not show that the ▮▮▮▮ offer was contingent in nature.

6

Accordingly, the email of March 6, 2023, constituted an offer and there was a meeting of the minds that the case was settling for ▮▮▮▮ upon Defendant's acceptance.[6] Moreover, Plaintiff's arguments to the contrary are not persuasive. As such, the basic elements of a binding agreement exist here.

---

[6] After initially contesting the monetary settlement amount, Plaintiff shifted gears to argue that there was no meeting of the minds because nonmonetary terms are objectionable. *See* Docket No. 55 at 5. This contention fails on multiple levels. As a threshold matter, Plaintiff did not properly raise this argument. Plaintiff's opposition brief alludes generally to not agreeing with "several of the proposed terms," but it does not identify particular terms that were in dispute. *Id.*; *see also* Docket No. 80 at 74-76. The attached declaration also fails to identify any particular nonmonetary terms in dispute. Docket No. 55-1 at ¶¶ 12, 16; *see also* Docket No. 80 at 88. As a corollary, the opposition brief fails to connect the dots as to how the unspecified terms are essential to the settlement, *cf. May*, 119 P.3d at 1258 ("what is considered an 'essential term' of a release varies with the nature and complexity of the case and must, therefore, be determined on a case-by-case basis"), or why the agreement to settle for ▮▮▮▮ would be unenforceable as a result, *cf. Facebook, Inc. v. Pac. NW Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011) (applying California law, including the "not . . . very demanding test" for enforcing a settlement agreement even if an important term affecting the value of the bargain had been left out). By failing to provide meaningful argument on this issue in her opposition brief, Plaintiff has waived it. *See Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). Plaintiff first identified to the Court specific nonmonetary terms purportedly in dispute in a supplement that was ordered to address a different issue. *See* Docket No. 72 at 3; *but see* Docket No. 68 (requiring supplemental briefing on a different issue). Attempting to develop an argument in a supplemental brief ordered on a different issue fails to preserve that argument. *See in re REMEC Inc. Secs. Litig.*, 702 F. Supp. 2d 1202, 1222 (S.D. Cal. 2010) (declining to address new arguments raised in supplemental brief); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (en banc) ("an issue will therefore be deemed waived if it is raised for the first time in a supplemental brief"). Moreover, the supplemental brief still fails to explain with elaboration why the particular nonmonetary terms are material and, even if they are material, why that would render the agreement reached to be unenforceable. At bottom, the Court is left without meaningful argument explaining why any alleged dispute regarding nonmonetary terms translates into denial of Defendant's motion.

The Court also notes the lack of support in the record for the factual predicate that Plaintiff is too concerned about nonmonetary terms to settle. Attorney Buchanan conveyed to Plaintiff and testified in Court that the nonmonetary terms are standard. Jt. Ex. 10; Docket No. 80 at 22. Attorney Buchanan stated in real-time that it was the <u>monetary term</u> that caused Plaintiff to not want to settle. Jt. Ex. 6 (email of April 20, 2023, stating that "Dr. Brathwaite does not feel comfortable settling this matter for ▮▮▮▮"); *see also* Docket No. 48-1 at ¶ 11. Concerns as to nonmonetary terms were not conveyed to the defense during this period. *See, e.g.*, Docket No. 80 at 29; Docket No. 48-1 at ¶ 11. Even when Attorney Buchanan eventually provided a proposed revision of the draft settlement agreement, Plaintiff did not contest two of the three nonmonetary terms that she now claims are disputed. *See* Jt. Ex. 9; Docket No. 80 at 39-40, 71. Lastly but significantly, it does not appear that the parties are at an impasse as to how any standard term should be memorialized in the written settlement agreement. *See, e.g.*, Docket No. 80 at 98; Docket No. 60-1 at ¶ 4. At bottom, there does not appear to be a genuine dispute regarding nonmonetary terms; this line of argument appears to be an attempt to manufacture a dispute to undo the monetary amount that was agreed upon. *Cf. Harper*, 552 F. Supp. 3d at 1048-52.

7

### B. Attorney Authority

Having determined that an agreement was reached, the undersigned turns to Plaintiff's argument that her attorney lacked the authority to make the offer that he conveyed in her name. *See, e.g.*, Docket No. 55 at 5-6. Defendant responds that, even were Plaintiff correct that her attorney lacked authority, the agreement remains enforceable because Attorney Buchanan had apparent authority to convey the offer. *See* Docket No. 60 at 5-7; *see also* Docket No. 80 at 95-96. Plaintiff has not provided any argument on apparent authority, leaving Defendant's contention as to apparent authority effectively unopposed. *Cf. Kiessling v. Rader*, 2018 WL 1401972, at *3 (D. Nev. Mar. 20, 2018) ("The appropriate time to raise these additional arguments has passed as Defendants should have raised these arguments before Judge Koppe"); Local Rule 7-2(d).[7]

An agent may bind a principal if it has either actual or apparent authority. *Dixon v. Thatcher*, 742 P.2d 1029, 1031 (Nev. 1987). Apparent authority exists when "a principal holds [her] agent out as possessing or permits him to exercise or to represent [her]self as possessing, under such circumstances as to estop the principal from denying its existence." *Myers v. Jones*, 657 P.2d 1163, 1164 (Nev. 1983). "In other words, once the principal cloaks the agent with the apparent authority to act, the principal is estopped from later denying the actions of the agent." *Ansell v. Spartan Pools LLC*, 2022 WL 860463, at *6 (Nev. Dist. Ct. Feb. 14, 2022) (citing *Ellis v. Nelson*, 233 P.2d 1072, 1076 (Nev. 1951)). To demonstrate apparent authority, the moving party must demonstrate: (1) it had a subjective belief the agent possessed authority to act for the principal and (2) the subjective belief is objectively reasonable. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 261 (Nev. 1997). Apparent authority may be established by the principal's authorization or recognition of similar acts by the agent. *Ansell*, 2022 WL 860463, at *6 (discussing *Harrah v. Home Furniture, Inc.*, 214 P.2d 1016, 1017-18 (Nev. 1950)). Hence, an attorney's "[a]ctive participation in the particulars of the settlement" serves as a basis for finding apparent authority. *See Collins v. Giovanniello & Michaels, LLP*, 2013 WL 8597707, at *4 (Nev. Dist. Ct. Apr. 18, 2013) (quoting *Clark v. Burden*, 917 S.W.2d 574, 576-77 (Ky. 1996)).

---

[7] In light of the conclusion reached herein that (at a minimum) apparent authority existed, the undersigned need not address whether Attorney Buchanan had actual authority.

8

There is no dispute here that Plaintiff gave Attorney Buchanan the power to bind her to a settlement agreement as a general matter. Plaintiff attested that she "expressly authorized my legal counsel to continue to engage in settlement discussions on [her] behalf." Jt. Ex. 7 at ¶ 6; *see also, e.g.*, Docket No. 80 at 49, 51, 70. The record in this case is also replete with manifestations that Attorney Buchanan had authority to act on Plaintiff's behalf. Significantly, this case was subject to an early neutral evaluation proceeding, at which Attorney Buchanan appeared with Plaintiff and engaged in settlement discussions, including making binding offers to settle. Docket No. 80 at 42, 87. Attorney Buchanan thereafter continued to participate actively in the settlement discussions, *see, e.g.*, Jt. Ex. 8; Docket No. 80 at 9, without providing any indication that he lacked authority or that his authority was limited, *see, e.g.*, Docket No. 48-1 at ¶ 7 (declaration of defense counsel). To the contrary, Attorney Buchanan continued to reference to defense counsel that Plaintiff had cloaked him with settlement authority even after the pertinent offer was made. Jt. Ex. 6 (email of April 20, 2023, in which Attorney Buchanan references his "authority" to "negotiate" a settlement on Plaintiff's behalf). Nor were the communications with opposing counsel isolated occurrences on this issue. On February 22, 2023, just days before the critical email, Attorney Buchanan represented to the Court that "the *parties* are engaged in settlement negotiations to resolve this matter" and that "the *parties* remain optimistic that they will be able to resolve this matter in the next few weeks." Docket No. 37 at 3 (emphasis added). Alluding more specifically to the email of March 6, 2023, Attorney Buchanan later represented to the Court that "Plaintiff provided Defendant with a written offer to settle." *See* Docket No. 39 at 2. Hence, there is no dispute that Attorney Buchanan engaged in settlement discussions throughout this case and was, in fact, cloaked with settlement authority by Plaintiff. The gist of Plaintiff's argument is that her attorney happened to lack the authority to advance the one offer that was accepted by Defendant, but the overall circumstances led naturally to Defendant's belief that Attorney Buchanan possessed authority for that settlement offer, too. *See, e.g.*, Docket No. 48-1 at ¶¶ 4, 6-8, 12, 14; Jt. Exs. 2, 6 (emails from defense counsel); Docket No. 80 at 25. The circumstances also confirm that such belief was objectively reasonable. To repeat, no contrary indication had been given to the defense and, significantly, Plaintiff offered to settle for less money a few months earlier at the early neutral

evaluation. *E.g.*, Docket No. 80 at 42, 87.[8] At a minimum, Attorney Buchanan was cloaked with apparent authority to offer a ▆▆▆ settlement.

Lastly, it is clear that Defendant would be substantially and adversely affected by not holding Plaintiff to the offer that was accepted. Indeed, Plaintiff's efforts to avoid enforcement of the settlement are coupled with new demands seeking substantially more money. *See, e.g.*, Jt. Ex. 9 at ¶ 2(a). The equities in this case fall firmly in Defendant's favor that it should enjoy the benefits of the bargain struck.[9]

In short, Attorney Buchanan possessed the apparent authority to settle Plaintiff's case vis-à-vis the ▆▆▆ counteroffer transmitted on March 6, 2023. Plaintiff is now estopped from arguing that the settlement agreement is unenforceable for lack of authority.

**C.     Statutory Protections**

The undersigned next turns to Plaintiff's arguments that she is entitled to relief from the settlement in light of protections afforded to older workers.

### 1.     Revocation

Plaintiff first argues that she was entitled to rescind or revoke the settlement agreement. *See* Docket No. 55 at 7; *see also* Docket No. 48-1 at ¶ 13. Given the murkiness of the arguments presented, the undersigned ordered supplemental briefs. Docket No. 68. As indicated from the bench, the premise of Plaintiff's argument is faulty as a matter of law. *See* Docket No. 80 at 4.

Certain federal employment statutes provide for special safeguards for settling claims. "Added as a collection of discrete amendments to the Age Discrimination in Employment Act ('ADEA') in 1990, the Older Workers Benefit Protection Act ('OWBPA') imposes mandatory requirements for waivers of ADEA rights and claims, *see* 29 U.S.C. § 626(f), to ensure that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the

---

[8] Attorney Buchanan and Plaintiff both testified that they recognized the lower offer Plaintiff made at the early neutral evaluation was "binding" in nature. *Id.*

[9] Plaintiff argues that it would be unfair and punitive to hold her to an agreement to settle for ▆▆▆. *See, e.g.*, Docket No. 80 at 102. The record does not bear out any unfairness to Plaintiff. To repeat, Plaintiff herself had agreed to settle for less money only a few months earlier. *E.g., id.* at 42, 87. At any rate, even were there unfairness to Plaintiff, which there is not, that is an issue more properly addressed to her attorney.

10

ADEA." *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1075-76 (9th Cir. 2007) (cleaned up). Under the OWBPA, an individual may not waive her right or claim unless it is "knowing and voluntary." 29 U.S.C. § 626(f)(1).

The OWBPA further specifies that a knowing and voluntary waiver exists as a general matter when the individual has been given "a period of at least 21 days within which to consider the agreement" and "a period of at least 7 days following the execution of such agreement ... [to] revoke the agreement." 29 U.S.C. § 626(f)(1)(F), (G). But the statute modifies those requirements for individuals who have filed suit, providing such individuals with "a reasonable period of time within which to consider the settlement agreement" and excluding any period to revoke the settlement agreement. 29 U.S.C. § 626(f)(2)(B). Quite clearly, Congress knew how to provide a right to revoke a settlement agreement, but chose not to provide that right to individuals who had filed suit. *Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994). Because Plaintiff's case is governed by Section 626(f)(2) (as opposed to Section 626(f)(1)), she has no statutory right to revoke the settlement agreement. *E.g.*, *Powell v. Omnicom*, 497 F.3d 124, 132 (2d Cir. 2007).

Accordingly, Plaintiff lacked a statutory right to revoke the settlement agreement.

### 2. Time to Consider

Having decided that Plaintiff had no right to revoke an existing agreement, the undersigned turns to the determination of whether she had a "reasonable time" to consider it. *See, e.g.*, Docket No. 55 at 7-8. She did.

"[T]he term 'reasonable time within which to consider the settlement agreement' means reasonable under all of the circumstances, including whether the individual is represented by counsel." 29 C.F.R. § 1625.22(g)(4). In addition to representation of counsel, pertinent circumstances may also include the sophistication of the plaintiff, the length of time since the adverse employment action, the length of time in litigating the matter, and the existence of prior settlement efforts in the case. *See, e.g.*, *Eswarappa v. Shed Inc./Kid's Club*, 685 F. Supp. 2d 229,

11

238 (D. Mass. 2010).[10] For a sophisticated plaintiff represented by counsel who has engaged in lengthy litigation proceedings that culminated in settlement years after her employment's termination, a few hours of time to consider settlement terms has been deemed sufficient. *See Powell*, 497 F.3d at 132; *see also Eswarappa*, 685 F. Supp. 2d at 238. Judges in this District have held that a reasonable time to consider a settlement existed for a represented plaintiff who participated in a three-hour settlement conference and then reached a settlement a week later. *McClain v. Corinthian Colleges, Inc.*, 2015 U.S. Dist. Lexis 52865, at *4-5 (D. Nev. Apr. 7, 2015) (Ferenbach, J.), *adopted*, 2015 U.S. Dist. Lexis 52864 (D. Nev. Apr. 22, 2015) (Mahan, J.).

Plaintiff had a reasonable time to consider the settlement agreement in this case. She is a sophisticated medical doctor, *see* Docket No. 1 at ¶ 23, represented by multiple attorneys, *see, e.g.*, Docket No. 53 at 1. The termination of her employment occurred two years before settling. *See* Docket No. 1 at ¶ 42. After filing a charge with the Equal Employment Opportunity Commission, *see* Docket No. 1-1, Plaintiff litigated this case for almost a year before settling, *see* Docket No. 1 (notice of electronic filing). On December 12, 2022, Plaintiff participated in a lengthy early neutral evaluation conference at which settlement was discussed for hours. Docket No. 31. Plaintiff testified that she understood that any settlement reached at that early neutral evaluation would have been binding. Docket No. 80 at 87. The parties continued to discuss settlement thereafter, which also included discussions between Plaintiff and her attorney. *E.g.*, *id.* at 45, 48. On March 6, 2023, Plaintiff herself proposed the settlement amount of ▮▮▮▮. Jt. Ex. 1.[11] On March 8, 2023, Defendant accepted Plaintiff's settlement offer with the agreement to be memorialized in writing

---

[10] These considerations track the purpose behind this provision in that an "employee who is terminated needs time to recover from the shock of losing a job, especially when that job was held for a long period. The employee needs time to learn about the conditions of termination, including any benefits being offered by the employer. Time also is necessary to locate and consult with an attorney if the employee wants to determine what legal rights may exist." *Powell*, 497 F.3d at 132 (quoting legislative history).

[11] Given the purpose of these protections is to ensure that older workers are not coerced or manipulated into settling their claim, *Syverson*, 472 F.3d at 1076, Defendant rightfully emphasizes that it was <u>Plaintiff</u> who made the ▮▮▮▮ settlement offer, *see, e.g.*, Docket No. 73 at 5.

12

with standard terms. Jt. Ex. 2. Plaintiff had more than reasonable time to consider the settlement agreement.[12]

Accordingly, the undersigned agrees with Defendant that Plaintiff was provided a reasonable time to consider the settlement agreement, such that the waiver of her rights was knowing and voluntary.

**IV.   CONCLUSION**

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion to enforce settlement be **GRANTED**.

Dated: January 24, 2024

_____
Nancy J. Koppe
United States Magistrate Judge

**<u>NOTICE</u>**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

---

[12] Despite repeatedly asserting that Plaintiff needed an opportunity to speak with her financial advisor, *see, e.g.*, Docket No. 55 at 8; Jt. Ex. 7 at ¶ 10, Plaintiff testified notably that she did not actually speak with her financial advisor about the ▇▇▇▇ settlement amount, Docket No. 80 at 47, 48, 74, 77.

13